UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| **FIFTH THIRD BANK, N.A.** | : | |
| **38 Fountain Square Plaza** | : | Case No. _____ |
| **Cincinnati, Ohio 45263,** | : | |
| | : | |
| **Plaintiff,** | : | Judge     _____ |
| | : | |
| **vs.** | : | |
| | : | |
| **D.DIP AUTOMOTIVE GROUP LLC d/b/a** | : | |
| **Maserati and Alfa Romeo of Monmouth,** | : | |
| **807 Route 35,** | : | |
| **Ocean Township, New Jersey 07712** | : | |
| | : | |
| **Serve also:** | : | |
| **D.DIP AUTOMOTIVE GROUP LLC** | : | |
| **d/b/a Maserati and Alfa Romeo** | : | |
| **of Monmouth,** | : | |
| **s/a Dairon L. Dip,** | : | |
| **4 Laredo Drive,** | : | |
| **Colts Neck, New Jersey 07722** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

## COMPLAINT

Plaintiff Fifth Third Bank, N.A. ("Fifth Third"), through counsel, and for its Complaint

(the "Complaint") against Defendant D.Dip Automotive Group LLC d/b/a Maserati and Alfa

Romeo of Monmouth (the "Defendant") hereby states as follows:

## PARTIES

1.      Fifth Third is an Ohio banking corporation with its principal place of business

located at 38 Fountain Square Plaza, Cincinnati, Ohio.

2.      Defendant is a New Jersey limited liability company that operates a car dealership at 807 State Route 35, Ocean, New Jersey 07712.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this case. Federal diversity jurisdiction exists under 28 U.S.C. § 1332 because Fifth Third and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in this district as a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Defendant is subject to personal jurisdiction in this judicial district and have minimum contacts with the State of Ohio.

## FACTUAL BACKGROUND

5.      On or about August 28, 2020, Fifth Third and Defendant entered into a Fifth Third Dealer Agreement (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit A.

6.      The purpose of the Agreement was to set forth the terms of a financing plan in which Defendant could offer Fifth Third's financing services to its customers in connection with the sale of new and used car's at Defendant's dealership.

## THE TERMS OF THE AGREEMENT

7.      As part of the Agreement, Defendant made the following representations and warranties (among others) in order to induce Fifth Third to finance the purchase of new and used cars:

> 1.      Each Loan application, retail installment sale contract, note and security agreement and all other documents ("Documentation") presented to Fifth Third by [Defendant] shall be submitted at the authorization of the customer, shall be the valid and binding obligation of the customer who shall have executed the same in the presence of the [Defendant] and shall be enforceable against said customer in accordance with its terms.

2

2.      To the best of [Defendant's] knowledge, information and belief, all information contained in the Documentation submitted to Fifth Third will be correct and complete. [Defendant] has no knowledge of any facts that would impair the value or validity of these transactions or the Documentation, and [Defendant] is authorized by its customer to submit all Documentation to Fifth Third.

*        *        *

8.      All signatures appearing in the Documentation will be authorized and genuine, and the Documentation will constitute the legal, valid and binding contractual obligations of those purporting to be bound and will be enforceable against the signers thereof in accordance with the terms contained therein. The Documentation and transaction will not be subject to any defenses, counterclaims, claims or setoffs by [Defendant] or customer against Fifth Third.

*        *        *

12.      [Defendant] will comply with all applicable federal, state and local consumer financial laws, regulations, rules and orders. [Defendant] will not engage in any unfair, deceptive or abusive acts or practices as defined by federal, state and local consumer financial law.

*See* Exhibit A, pp, 1-2, Section II A.

8.      In addition to the above representations and warranties, and as part of the Agreement, the parties agreed that Defendant would be liable to Fifth Third for a default by a customer "in the case of fraud, willful misconduct, breach of [the Agreement] or of any warranty or representation made. . .by [Defendant], any misrepresentation by [Defendant], its employees or agents, pertaining to or contained in the Documentation, or the existence of any event set forth in Section II F [of the Agreement]." *See* Exhibit A, p. 3, Section II E.

9.      Further, the parties agreed that Defendant would "indemnify Fifth Third and hold Fifth Third harmless from any and all losses, damages, reasonable attorneys' fees, claims, expenses and costs which Fifth Third may incur by reason of any breach or violation of any terms or

provision of this Agreement by [Defendant]. . . or resulting from any actions, statements or omissions of [Defendant]." *See* Exhibit A, p. 3, Section II G.

10. Defendant agreed to "arrange for delivery of documents to Fifth Third including documents evidencing Fifth Third's perfected security interest in the Collateral. [Defendant] shall take such action necessary to perfect Fifth Third's security interest within thirty days after delivery of the Collateral." *See* Exhibit A, p. 1, Section I B.

11. Finally, the Agreement states that Dealer's failure to comply with any requirements of the Agreement constitute an event of default, including but not limited to:

    a. "Any representation, warranty or statement made herein or in the Documentation furnished to Fifth Third by [Defendant] is incorrect when made or when reaffirmed; or

    b. [Defendant] fails to observe or perform any covenant, condition or agreement to be observed or performed pursuant to the terms hereof or the Documentation, where applicable."

*See* Exhibit A, p. 16, Section I F.

12. In the event of a default by Defendant, Defendant is required to "repurchase any all affected Loans from Fifth Third by paying Fifth Third the payoff balance of the Loans. Upon receipt of such sums from [Defendant], Fifth Third will transfer and assign, without recourse or warranty, any and all retail installment sales contracts, notes, security agreements, liens and other Documentation covered thereby to [Defendant.]" *Id.*, Section I H.

## THE CHANGEUX LOAN

13.     Upon information or belief, on or about July 2, 2021, Defendant sold Beethoven Changeux ("Changeux") eight vehicles, including a 2018 Land Rover Range Rover Velar VIN# SALYM2RV0JA7505553 (the "Changeux Vehicle").

14.     Upon information and belief, Defendant sold Changeux $528,669.00 worth of vehicles on July 2, 2021.

15.     Changeux's reported annual income was about $168,900.00 as of July 2, 2021.

16.     Defendant made and assigned to Fifth Third, pursuant to the Agreement, a loan totaling $71,566.82 to finance the purchase the Changeux Vehicle (the "Changeux Loan").

17.     To induce Fifth Third to accept the Changeux Loan, Defendant, through its employees and/or agents, supplied false and misleading information Fifth Third, including, but not limited to, the following:

      a.  A Credit Application (the "Changeux Credit Application"); and

      b.  A Retail Installment Contract and Security Agreement (the "Changeux RICSA"), collectively attached here to Exhibit B.

18.     The Changeux Credit Application and Changeux RICSA were prepared by one or more employees or agents of Defendant.

19.     The Changeux Credit Application and Changeux RICSA contained false or misleading information, including, but not limited to, omitting Defendant's decision to sell Changeux eight total cars valued at far more than Changeux's annual income in one day.

20.     Additionally, the Changeux Credit Application and Changeux RICSA contain, upon information and belief, false information as to Changeux's annual income and employment.

21.     Fifth Third justifiably and reasonably relied upon the Changeux Credit Application and Changeux RICSA in accepting an assignment of the Changeux Loan from Defendant.

22.     Fifth Third would not have accepted the Changeux Loan but for Defendant's representations and warranties in the Agreement that, among other things, the Changeux Credit Application and Changeux RICSA, represented legal, valid and binding contractual obligations of Defendant's customer, and that Defendant had no knowledge of any facts that would impair the value or validity of the transaction.

23.     Fifth Third sent a written demand letter to Defendant requesting that Defendant repurchase the Changeux Loan under the terms of the Agreement.

24.     To date, Defendant has failed and refused to repurchase the Changeux Loan from Fifth Third.

25.     The outstanding balance owed on the Changeux Loan as of December 7, 2022 was $37,558.17, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have continued, and will continue, to accrue.

## THE MANCHENO LOAN

26.     Upon information or belief, on or about October 4, 2021, Defendant sold Juriel Mancheno Jr. ("Mancheno") eight vehicles, including 2018 Porsche Macan VIN# WP1AA2A53JLB10997 (the "Mancheno Vehicle").

27.     Upon information and belief, Defendant sold Mancheno $449,635.00 worth of vehicles on October 4, 2021.

28.     Mancheno's reported annual income was about $150,000.00 as of October 4, 2021.

29.     Defendant made and assigned to Fifth Third, pursuant to the Agreement, a loan totaling $52,465.42 to finance the purchase the Mancheno Vehicle (the "Mancheno Loan").

30.     To induce Fifth Third to accept the Changeux Loan, Defendant, through its employees and/or agents, supplied false and misleading information Fifth Third, including, but not limited to, the following:

   a. A Credit Application (the "Mancheno Credit Application"); and

   b. A Retail Installment Contract and Security Agreement (the "Mancheno RICSA"), collectively attached here to Exhibit C.

31.     The Mancheno Credit Application and Mancheno RICSA were prepared by one or more employees or agents of Defendant.

32.     The Mancheno Credit Application and Mancheno RICSA contained false or misleading information, including, but not limited to, omitting Defendant's decision to sell Mancheno eight total cars valued at far more than Mancheno's annual income in one day.

33.     Additionally, the Mancheno Credit Application and Mancheno RICSA contain, upon information and belief, false information as to Mancheno's annual income and employment.

34.     Fifth Third justifiably and reasonably relied upon the Mancheno Credit Application and Mancheno RICSA in accepting an assignment of the Mancheno Loan from Defendant.

35.     Fifth Third would not have accepted the Mancheno Loan but for Defendant's representations and warranties in the Agreement that, among other things, the Mancheno Credit Application and Mancheno RICSA, represented legal, valid and binding contractual obligations of Defendant's customer, and that Defendant had no knowledge of any facts that would impair the value or validity of the transaction.

36.     Fifth Third sent a written demand letter to Defendant requesting that Defendant repurchase the Mancheno Loan under the terms of the Agreement.

37.     To date, Defendant has failed and refused to repurchase the Mancheno Loan from Fifth Third.

38.     Additionally, Defendant failed to perfect Fifth Third's security interest in the Mancheno Vehicle.

39.     The outstanding balance owed on the Mancheno Loan as of December 7, 2022 was $53,775.20, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have continued, and will continue, to accrue.

## THE ARCIABASTERRECHEA LOAN

40.     Upon information or belief, on or about September 8, 2021, Defendant sold Dayami Arciabasterrechea ("Arciabasterrechea") six vehicles, including 2022 Alfa Romeo Stelvio VIN# ZASPAKAN9N7D24958 (the "Arciabasterrechea Vehicle").

41.     Upon information and belief, Defendant sold Arciabasterrechea $260,741.00 worth of vehicles on September 8, 2021.

42.     Arciabasterrechea's reported annual income was about $95,000.00 as of September 8, 2021.

43.     Defendant made and assigned to Fifth Third, pursuant to the Agreement, a loan totaling $56,775.80 to finance the purchase the Arciabasterrechea Vehicle (the "Arciabasterrechea Loan").

44.     To induce Fifth Third to accept the Arciabasterrechea Loan, Defendant, through its employees and/or agents, supplied false and misleading information Fifth Third, including, but not limited to, the following:

    a.   A Credit Application (the "Arciabasterrechea Credit Application"); and

b. A Retail Installment Contract and Security Agreement (the "Arciabasterrechea RICSA"), collectively attached here to <u>Exhibit D</u>.

45.    The Arciabasterrechea Credit Application and Arciabasterrechea RICSA were prepared by one or more employees or agents of Defendant.

46.    The Arciabasterrechea Credit Application and Arciabasterrechea RICSA contained false or misleading information, including, but not limited to, omitting Defendant's decision to sell Arciabasterrechea six total cars valued at far more than Arciabasterrechea's annual income.

47.    Additionally, the Arciabasterrechea Credit Application and Arciabasterrechea RICSA contain, upon information and belief, false information as to Arciabasterrechea's annual income and employment.

48.    Fifth Third justifiably and reasonably relied upon the Arciabasterrechea Credit Application and Arciabasterrechea RICSA in accepting an assignment of the Arciabasterrechea Loan from Defendant.

49.    Fifth Third would not have accepted the Arciabasterrechea Loan but for Defendant's representations and warranties in the Agreement that, among other things, the Arciabasterrechea Credit Application and Arciabasterrechea RICSA, represented legal, valid and binding contractual obligations of Defendant's customer, and that Defendant had no knowledge of any facts that would impair the value or validity of the transaction.

50.    Fifth Third sent a written demand letter to Defendant requesting that Defendant repurchase the Arciabasterrechea Loan under the terms of the Agreement.

51.    To date, Defendant has failed and refused to repurchase the Arciabasterrechea Loan from Fifth Third.

52.     The outstanding balance owed on the Arciabasterrechea Loan as of December 7, 2022 was $22,157.37, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have continued, and will continue, to accrue.

## FIFTH THIRD'S LOSSES

53.     The Changeux Vehicle was repossessed, and Fifth Third sold the Vehicle at auction. The outstanding balance on the Changeux Loan is $37,558.17.

54.     Defendant failed to perfect Fifth Third's lien on the Mancheno Vehicle. Accordingly, Fifth Third could not make repossession efforts. The outstanding balance on the Mancheno Loan is $53,775.20.

55.     Upon information and belief, Arciabasterrechea took the Arciabasterrechea Vehicle to another dealer to get work done, but never paid for or claimed the Vehicle. Fifth Third paid to get the Arciabasterrechea out of impound, and sold the Vehicle at auction. The outstanding balance on the Arciabasterrechea Loan is $22,157.37.

56.     To date, the deficiency balances on the Changeux, Mancheno, and Arciabasterrechea Loans (collectively, the "Loans") total $113,490.74.

## COUNT ONE
### (Breach of Contract – Fifth Third Dealer Agreement)

57.     Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

58.     Fifth Third has complied with all of the terms of the Agreement.

59.     Defendant has breached and is default of the Agreement in numerous ways, including failing to perfect Fifth Third's security interest in the Mancheno Vehicle. *See* Exhibit A, p. 1, Section I B.

60.     Defendant further breached the Agreement by making representations and warranties in connection with the Documentation (as defined in the Agreement) that were incorrect, and/or submitting the Documentation to Fifth Third with incorrect information. *See* Exhibit A, pp. 1 and 3, Section II A and F 1.

61.     Specifically, Defendant did have knowledge of facts that would impair the value or validity of the transactions in questions and failed to share the same with Fifth Third – namely, Defendant's decision to simultaneously sell well over $1,000,000.00 worth of vehicles to the customers in question, finance them with separate lenders, but keep Fifth Third and other lenders in the dark regarding the substantial financial obligations that the customers were undertaking at that time and that would not otherwise be available to Fifth Third through credit inquiries.

62.      Defendant has breached and is default of the Agreement because one or more of its employees or agents completed the Documentation (as defined in the Agreement) including, but not limited to, the Credit Applications and RICSAs at issue, and the Documentation contained false and/or misleading information. *See* Exhibit A, pp. 1 and 3, Section II A and F 1.

63.     Defendant has further breached and is in default of the Agreement by submitting the Credit Applications and RICSAs at issue to Fifth Third, which contained false information as to the purchases by Changeux, Mancheno, and Arciabasterrechea (collectively, the "Customers"), specifically that Defendant failed to disclose that it sold each Customer six to eight vehicles in one day together valued at far more than his respective annual income.

64.     The Agreement contains repurchase obligations which are triggered when the terms are breached by the dealer and there is an event of default. The Agreement also contains an attorneys' fees and costs provision.

65.     Because Defendant has breached and is in default under the terms of the Agreement, Defendant is obligated to repurchase the Loans, and to reimburse Fifth Third for any attorney's fees and costs incurred.

66.     Fifth Third sent written demand letters to Defendant requesting that Defendant repurchase the Loans under the terms of the Agreement.

67.     To date, Defendant has failed and refused to repurchase the Loans from Fifth Third.

68.     The total amount required to repurchase the Loans now exceeds $113,490.74 together with interest, applicable late charges, and expenses, which continue to accrue. In addition, Fifth Third has incurred costs and attorneys' fees in enforcing the Agreement, and Fifth Third's costs and attorneys' fees continue to accrue.

## COUNT TWO
### (Negligent Misrepresentation)

69.     Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

70.     Defendant supplied false information to Fifth Third during the course of its business and in a transaction in which it had a pecuniary interest – i.e., the sale of the Changeux, Mancheno, and Arciabasterrechea Vehicles (collectively, the "Vehicles").

71.     The false information supplied by Defendant to Fifth Third included, but is not limited to, the Credit Applications and RICSAs, which misrepresented the credit information associated with the Loans, and the Defendant's decision to sell the Customers six to eight vehicles on the same day without disclosing that information to Fifth Third—each transaction valued at more than the respective Customer's annual income.

72.     The false information supplied by Defendant to Fifth Third was for the guidance of Fifth Third in connection with its decision to accept the Loans.

73.     By supplying false information in the Credit Applications and RICSAs in connection with the sale of the Vehicles, Defendant failed to exercise reasonable care or competence in obtaining and/or communicating information required by Fifth Third in financing the purchase of the Vehicles.

74.     Fifth Third justifiably relied on the information supplied by Defendant and contained in the Credit Applications and RICSAs when making the Loans for the purchase of the Vehicles.

75.     Fifth Third has been and continues to be damaged by the negligent misrepresentations of Defendant in an amount to be proven at trial but exceeding $113,490.74 for the current amount due on the Loans, together with interest, applicable late charges, costs, expenses, and attorneys' fees.

## COUNT THREE
### (Unjust Enrichment)

76.     Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

77.     To the extent the Agreement is found not to be enforceable against Defendant, Fifth Third is entitled to recover against Defendant, under the doctrine of unjust enrichment, an amount exceeding $113,490.74 for the current amount due on the Loans, together with interest, applicable late charges, costs, expenses, and attorneys' fees, because there has been: (a) a benefit conferred upon Defendant at Fifth Third's expense; (b) a resulting appreciation of benefit by Defendant; and (c) an inequitable retention of benefit without payment by Defendant.

**WHEREFORE**, Fifth Third respectfully prays for the following relief:

1.      A judgment against Defendant in an amount exceeding $113,490.74, together with interest, applicable late charges, costs, expenses, and an award of reasonable attorneys' fees; and

2.    For all other relief, legal and equitable, to which Fifth Third may be entitled.


Dated: March 21, 2023

Respectfully submitted,

*/s/* **R. Samuel Gilley**
R. Samuel Gilley (0092533)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel:  (513) 977-8533
Fax:  (513) 977-8141
Email:  samuel.gilley@dinsmore.com

*Attorney for Fifth Third Bank*